# United States Court of Appeals
## For the First Circuit

No. 02-2273

GEORGE LOPES,

Plaintiff, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Circuit Judge,
Bownes, Senior Circuit Judge,
and Howard, Circuit Judge.

Howard I. Rosen, with whom Newman & Newman, P.C. were on
brief, for appellant.
Stephen S. Churchill, with whom James F. Kavanaugh, Jr. and
Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP were on brief, for
appellee.

June 9, 2003

**HOWARD**, **Circuit Judge**.  Plaintiff-appellant George Lopes appeals from an adverse summary judgment ruling holding that defendant-appellee Metropolitan Life Insurance Company ("MetLife") did not violate the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, in terminating his long-term disability benefits.  We affirm.

## I.

Lopes began working at Fischbach Corporation in 1969.  He eventually became a Signal Project engineer, supervising the installation of signal and electrical equipment.  While employed at Fischbach, Lopes was enrolled as a participant in the MetLife-sponsored Fischbach Group Insurance Plan ("the Plan").  The Plan provides for long-term disability benefits for the first twenty-four months of disability if a physical impairment prevents the employee from working in his regular occupation.  To qualify for benefits after that period, the plan participant must either be "completely and continuously unable to perform the duties of any gainful work or service for which [he is] reasonably qualified taking into consideration [his] training, education, and experience and past earnings," or have suffered a 50% (or more) loss of earnings capacity.

In early 1996, Lopes was diagnosed with stage IV pulmonary sarcoidosis, a chronic inflammation of the lungs. Lopes stopped working at Fischbach on February 20, 1996, and shortly

-2-

thereafter filed for long-term disability benefits under the Plan. On May 28, 1996, Lopes underwent a right lung transplant. Subsequently, Lopes' attending physician, Dr. Lynda Cristiano, filed a statement with MetLife characterizing Lopes' impairment as "Class 5" (on a scale from 1 to 5) and totally disabling.[1] Nonetheless, Dr. Cristiano also opined that Lopes was a "suitable candidate for future rehabilitation." MetLife began paying Lopes benefits on August 18, 1996.

During the next two years, Lopes received disability payments from the Plan and followed a rehabilitation program. But Lopes' health was precarious: he underwent several bronchoscopies, lung tissue biopsies, and was twice hospitalized for possible pneumonia or infection. Lopes also suffered from "post right lung transplant," sarcoidosis, hypertension, hypercholesterol, diabetes mellitus, right bronchial stenosis, and renal failure. Consequently, he required ongoing medical supervision and several medications.

Between 1997 and 1999, Drs. Edward P. Ingenito and Aaron Deykin (who were then treating Lopes) submitted to MetLife two physician's statements in which they characterized Lopes' impairment as "Class 5" and totally disabling. During this same period, they also completed several physical capacities evaluations

---

[1]A person with a Class 5 impairment has "a [s]evere limitation of physical capacity" and is "incapable of minimum ([]sedentary) activity."

in which they indicated that Lopes' physical abilities were limited. Over time, however, these evaluations did note improvement in his ability to lift and carry objects and to perform other everyday physical activities such as grasping, bending, and reaching above shoulder level.

Under the Plan, MetLife reevaluated Lopes' eligibility for continued benefits after twenty-four months. At that point, MetLife's definition of disability became more spartan:

> However, after the first 24 months of benefit payments, you must also be completely and continuously unable to perform the duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, and experience and past earnings.

In short, Lopes would only continue receiving benefits if his illness prevented him from performing any job that matched his skill set.

On October 3, 2000, Dr. Ingenito submitted the final physician's statement MetLife received before terminating Lopes' benefits. For the first time, Dr. Ingenito characterized his physical impairment as "Class 4," which signifies a "moderate limitation of functional capacity," and implies a capability to engage in "clerical/administrative ([]sedentary) activity."[2]

---

[2]The Dictionary of Occupational Titles contains the following definition of sedentary work:

> S-Sedentary Work--Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a

-4-

Nevertheless, despite describing the impairment as "Class 4," Dr. Ingenito opined that Lopes remained "totally disabled" from performing his former occupation and any other work, and that he lacked prospects for significant improvement.

On February 7, 2001, MetLife wrote Lopes and advised him that it had terminated his disability benefits on January 31, 2001. The letter explained that Lopes was no longer totally disabled under the Plan based on Lopes' most recent medical information, a vocational assessment, and all of the medical evidence contained in Lopes' file. MetLife relied heavily on Dr. Ingenito's report in explaining its decision:

> You can lift and carry up to twenty pounds frequently, you can bend and reach above shoulder level frequently, you can squat, crawl, climb, occasionally, operate a motor vehicle, and use both your hands to perform repetitive fine finger movements, eye/hand movements and pushing and pulling. [Dr. Ingenito] states that in regards to physical impairment you have moderate limitation of functional capacity, you are capable of clerical/administrative work, sedentary activity.

---

negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

-5-

Citing a "transferable skills analysis" completed by a vocational skills consultant, the letter identified several occupations for which Lopes qualified.[3]

Although not mentioned in the letter, MetLife also considered an analysis of Lopes' vocational prospects conducted by Dr. R. Kevin Smith, a board-certified Doctor of Osteopathy in Preventative and Occupational Medicine. Dr. Smith did not personally examine Lopes, but rather based his evaluation on the information in MetLife's file, including the physicians' reports and the vocational assessment. Smith concluded that Lopes' physical condition had stabilized and that Lopes was capable of performing a full-time sedentary job.

Lopes appealed MetLife's decision to terminate his benefits by letter dated August 10, 2001. Lopes attached to his letter a list of eleven medications and supplements that he was taking regularly, and promised to submit additional medical information. On October 3, 2001, MetLife denied Lopes' appeal. In its denial, MetLife reiterated its rationale for terminating Lopes' benefits, placing particular emphasis on Lopes' apparent ability to

---

[3]The analysis considered whether there were any jobs within a 60-mile radius of Lopes' residence that he could perform given his physical impairment and qualifications (i.e., his completion of high school, a certificate from Coyne Electrical School, and experience with electrical power generators while in the United States Army Reserve). Based on Lopes' skills, the occupations identified included, but were not limited to, "Controls Designer," "Logistics Engineer," "Specification Writer," and "Dispatcher."

engage in sedentary activity. MetLife also noted that, notwithstanding Lopes' promise to submit additional materials, "there were no current medical records in file."

Subsequently, Lopes sued MetLife in Massachusetts superior court, claiming that MetLife's decision to terminate his benefits violated state statutory and common law. On February 22, 2000, MetLife removed this matter to the United States District Court for the District of Massachusetts on the basis of ERISA preemption. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67(1987). Lopes then amended his complaint to allege a violation of ERISA § 1132(a)(1)(b).[4] In due course, the parties cross-moved for summary judgment.

Because the Plan vests discretionary authority in MetLife to determine eligibility for benefits or to construe its terms,[5]

---

[4]Section 502 states, in pertinent part:

(a) A civil action may be brought-
(1) by a participant or beneficiary-
...
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
...

[5]The relevant provision of the Plan states:

In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in

the district court first determined that it would not upset MetLife's termination of Lopes' benefits unless it found the termination to be arbitrary and capricious. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)(directing courts to accord deference to benefit determinations made under plans that vest discretionary decision-making authority in their administrators). In so ruling, the court rejected Lopes' arguments in favor of de novo review, that MetLife (1) acted under a conflict of interest as both the insurer and plan administrator, and (2) acted with improper motivation in terminating his benefits. See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419-20 (1st Cir. 2000)(rejecting an argument in favor of a less deferential standard of review in similar circumstances, but emphasizing that dual role evidence or evidence of improper motivation would factor into the functionally equivalent inquiries into whether the administrator's decision was "arbitrary and capricious," an "abuse of discretion," or "unreasonable"). The court then determined that, based on the evidence that was before it, MetLife acted reasonably in terminating Lopes' benefits.

---

accordance with the terms of the Plan.
Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Accordingly, the court granted MetLife's cross-motion for summary judgment and denied Lopes' cross-motion. This appeal followed.

## II.

On appeal, Lopes renews his arguments in favor of de novo review and urges us to consider evidence outside the administrative record. Alternatively, Lopes contends that MetLife's decision was erroneous even under a more deferential standard of review. We reject Lopes' arguments for de novo review without further elaboration because they are precluded by settled circuit precedent. See Pari-Fasano, 230 F.3d at 419-20; see also supra at 7 (summarizing Pari-Fasano's explanation how benefits determinations are to be reviewed in circumstances such as this).[6] We also reject Lopes' argument in favor of supplementing the administrative record with additional medical evidence. Finally, we reject Lopes' attack on the merits of MetLife's decision. While the evidence before MetLife did not compel a conclusion that Lopes could return to work, it was of such a nature as to render the conclusion a permissible exercise of MetLife's discretion.

Before addressing the merits of MetLife's decision, we first address Lopes' argument that, given MetLife's potential bias,

---

[6]In so ruling, we further note that Lopes' "improper motivation" evidence -- a MetLife document observing that the termination of Lopes' benefits would save $174,000 -- is not particularly convincing. Obviously, the termination "saved" MetLife the money it had allocated to paying Lopes' benefits after January 31, 2001, and we see nothing untoward in a MetLife employee documenting that fact.

we should consider evidence not before the plan administrator at the time of the challenged decision:  an affidavit from another physician and a medical note written several weeks after MetLife's final determination.  In  reviewing an ERISA determination for arbitrariness, we and the overwhelming majority of other circuits have held that there is a strong presumption that the required deferential review of a plan administrator's benefits decision should be limited to the evidentiary record presented to the administrator.  See Liston v. UNUM Corp. Officer Severance Plan, No. 02-1956, -- F.3d --, sl. op. at 7-8 (1st Cir., May 27, 2003)(in reviewing a denial of severance benefits, stating that "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.").   Review of the administrative record for reasonableness logically implies review of the record available to the plan administrator; it is anomalous to suggest that an administrator acted unreasonably "by ignoring information never presented to it." See id.  We thus affirm the district court's decision not to include evidence outside of the claim file.

Mindful that our review for reasonableness is just that -- "a review and not a rubber stamp," Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994); see also Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) -- we turn to the merits. We begin with the evidence that is at the center of this dispute:

the attending physician's reports.  In all but the final submission, Lopes' doctors opined that "he was incapable of minimum ([]sedentary) activity," and that he was totally disabled from working.  In the final report, however, while still opining that Lopes could not work, Dr. Ingenito gave Lopes a "Class 4" impairment classification, which implies that Lopes was capable of sedentary activity.  Moreover, at the time Dr. Ingenito submitted the report, he also completed a physical capacities evaluation in which he noted that Lopes could "frequently" lift and carry up to 20 pounds; "occasionally" lift and carry up to 50 pounds; and perform simple repetitive motions such as grasping, pushing, pulling, and fine manipulation.  An endoscopy and examination completed at that same time indicated that Lopes did not suffer from fever or chest pain, and that Lopes' tolerance for exercise had improved since the previous year.[7]  All of this evidence supports Dr. Smith's independent conclusion that Lopes was capable of sedentary work.[8]

---

[7]Lopes had submitted a form describing his "Activities of Daily Living" in which he claimed that he drove for short periods, took daily walks, and played golf with a cart.

[8]Lopes challenges MetLife's reliance on the opinion of an osteopath rather than a medical doctor qualified to treat Lopes' maladies. Lopes points out that, in Massachusetts, an osteopath may not prescribe or administer drugs for internal use or perform operations. Mass. Gen. Laws ch. 112, § 11.  Lopes' emphasis on whether an osteopath can treat him does not address whether a plan administrator can rely on an osteopath's review of the record when it determines whether a plan participant is able to perform an occupation.  Surely, it may so long as the osteopath's expertise is germane to the area of inquiry.  Here, Dr.

To be sure, the record contains evidence that Lopes still suffers from serious health issues.  Since his operation, Lopes has been hospitalized twice.  Lopes' spouse receives almost all of his worker's compensation benefits based on the stark discrepancy between their life expectancies.  Lopes has also been receiving Social Security disability benefits since 1996.[9]  Moreover, Lopes encounters a number of daily challenges in performing routine chores, has a suppressed immune system,[10] and has trouble sleeping through the night.  But the issue in this appeal is "not which side we believe is right, but whether the insurer has substantial evidentiary grounds for a reasonable decision in its favor." Brigham v. Sun Life of Can., 317 F.3d 72, 85 (1st Cir. 2003)(quoting Doyle v. Paul Revere Life Insur. Co., 144 F.3d 181,

---

Smith was board certified in occupational medicine and thus competent to assess Lopes' ability to work.

At oral argument, Lopes also suggested (for the first time) that this court must give special weight to his treating physician's opinion or that of a physician qualified to treat Lopes. See Leahy v. Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) (describing the so-called "treating physician's rule").  But we do not address arguments first raised at oral argument.  Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999).  In any event, we note that the Supreme Court has very recently rejected the rule in ERISA cases. See Nord v. Black & Decker Disability Plan, -- S. Ct. --, 2003 WL 21210418 (May 27, 2003).

[9]It is well settled that a Social Security disability benefits decision is relevant evidence but "should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan." Pari-Fasano, 230 F.3d at 420.

[10]Lopes does not contend, however, that his immune system is so compromised that it prohibits him from engaging in the human interactions necessary to perform most sedentary jobs.

-12-

184 (1st Cir. 1998)).  Here, MetLife  had grounds for concluding that Lopes can engage in sedentary work.  Accordingly, its decision must stand.

## III.

The district court's judgment is **<u>affirmed</u>**.