# United States Court of Appeals

## For the First Circuit

No. 03-2053

BONNIE GANNON,

Plaintiff-Appellee,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Lourie,* and
Howard, Circuit Judges.

Stephen S. Churchill with whom James F. Kavanaugh, Jr. was on
brief for appellant.
Robert J. Hennigan, Jr. for appellee.

February 19, 2004

* Of the Federal Circuit, sitting by designation.

**LOURIE, Circuit Judge**.    Metropolitan Life Insurance Company ("MetLife") appeals from the district court's entry of summary judgment in favor of Bonnie Gannon on her claim that MetLife violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (2000), by terminating her long-term disability benefits.  Gannon v. Metro. Life Ins. Co., Civ. Action No. 01-40192-NMG (D. Mass. June 12, 2003).  Because we conclude that MetLife's benefits decision was not arbitrary or capricious, we reverse.

## BACKGROUND

Ms. Gannon began working at Astra Pharmaceutical Products, Inc. in March 1991.  During her employment with Astra she participated in the Astra USA, Inc. Long Term Disability Plan (the "Plan"), which was administered by MetLife.  Under the Plan, a participant is initially considered "disabled" and thus entitled to disability benefits if she is unable to perform the material duties of her regular job.  After twenty-four months, however, a participant is considered "disabled" only if she is also unable to perform "the material duties of any gainful work or service for which [she is] reasonably qualified taking into consideration [her] training, education, experience, and past earnings."

Gannon was diagnosed with a tumor of the spinal cord in July 1997.  She stopped working shortly thereafter and underwent surgery the following month.  Gannon subsequently applied for, and

-2-

on June 6, 1998 was finally awarded, long-term disability benefits under the Plan.

On October 17, 2000, however, MetLife denied Gannon's request for continued disability benefits, determining that Gannon no longer qualified as "disabled" under the Plan because she was not unable to perform "the material duties of any gainful work or service for which [she was] reasonably qualified." In a letter informing Gannon of its decision, MetLife cited the following documents: an attending physician statement, which documented Gannon's subjective complaints of pain but indicated that she could sit, stand, and walk on an intermittent basis; a functional capacities evaluation ("FCE"), which stated that Gannon should be capable of performing a sedentary occupation; an independent medical consultant's analysis, which stated the same; and a transferable skills analysis ("TSA"), which identified three occupations that Gannon should be capable of performing. MetLife subsequently denied Gannon's appeal of its decision to terminate her disability benefits on June 25, 2001.

On October 16, 2001, Gannon filed a complaint against MetLife in the United States District Court for the District of Massachusetts, alleging that MetLife wrongfully terminated her disability benefits in violation of ERISA. The district court denied MetLife's motion for summary judgment and granted Gannon's cross-motion for summary judgment, concluding that MetLife's

decision to terminate Gannon's disability benefits was arbitrary and capricious because it was not supported by reasonably sufficient evidence. More particularly, the court found the evidence relied on by MetLife to be "circumstantial, unconvincing and contrary to direct medical opinion." Gannon, slip op. at 12. The court accordingly granted summary judgment to Gannon. This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment de novo. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29 (1st Cir. 2001). When, as in this case,[1] a plan administrator has discretion to determine an applicant's eligibility for and entitlement to benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion." Id. at 29-30 (citation omitted). In other words, the administrator's decision must be upheld if it is reasoned and supported by substantial evidence. Id. at 30. Evidence is substantial if it is reasonably sufficient to support a conclusion,

---

[1] The Plan provides that MetLife, as the plan administrator, "shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." It further provides that "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious."

-4-

and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary. Id.

On appeal, MetLife argues that its decision to terminate Gannon's disability benefits was not arbitrary and capricious, despite the conflicting evidence relating to Gannon's ability to work. MetLife adverts to the following five pieces of evidence in support of its position: the FCE, the independent medical consultant's opinion, the TSA, a surveillance report, and the Social Security Administration's ("SSA's") denial of Gannon's claim for disability benefits. Gannon responds that MetLife's decision to terminate her disability benefits was arbitrary and capricious because it was not supported by substantial evidence and was in direct contradiction to the opinions of Dr. Robin Davidson and Dr. Charles Sweet, the two physicians who treated and examined her.

We agree with MetLife that its decision to terminate Gannon's disability benefits was not arbitrary and capricious, for our review of the record convinces us that MetLife's decision was reasonably supported by the evidence in the record. First, MetLife directs our attention to the FCE, a report completed by a physical therapist who evaluated Gannon over a two-day period in August 2000. The FCE indicated that Gannon did not put forth her maximum effort during the tests (refusing to complete tasks due to subjective complaints of pain but without objective limitations) and that her performance was inconsistent in various ways. With

-5-

regard to Gannon's functional capacities, the FCE indicated that Gannon demonstrated significant abilities with walking and hand coordination. The FCE evaluator further observed that Gannon presented a sitting tolerance of four minutes and twelve seconds, but stated that "she may be able to return to work performing data entry" if she could change positions every five minutes. Ultimately, the FCE evaluator concluded that Gannon was capable of working eight hours per day and forty hours per week with certain restrictions. Despite the district court's discrediting of the FCE's overall recommendation, Gannon, slip op. at 26, and recognizing that reasonable minds could differ about this analysis, we conclude that MetLife's reliance on the FCE was rational. The FCE provided objective clinical evidence that Gannon was physically capable of performing restricted work activities. It also provided evidence that Gannon was exaggerating her symptoms. Although we do not doubt that Gannon continues to experience pain, it was appropriate for the physical therapist, based upon his observations of Gannon over a two-day period, to assess the extent to which her pain limited her functional capabilities. See Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003); Leahy v. Raytheon Co., 315 F.3d 11, 19 (1st Cir. 2002). It was therefore reasonable for MetLife to rely on the FCE as evidence supporting its determination that Gannon was not "disabled" under the Plan because she was capable of performing sedentary work.

Second, MetLife focuses on the report of Dr. Gary Greenhood, an independent medical consultant who reviewed Gannon's file in September 2000. When asked whether the information in the file suggested that Gannon possessed the work capacity to perform certain sedentary jobs, Dr. Greenhood replied "Yes." He then explained that, based upon his assessment of Gannon's medical records (which included Dr. Sweet's opinion, Dr. Davidson's opinions, and an MRI) as well as the FCE, Gannon's documented limitations "would not be expected to preclude all forms of sedentary work capacity." Dr. Greenhood's opinion thus constitutes medical evidence in support of MetLife's decision to terminate Gannon's benefits. That Dr. Greenhood did not physically examine Gannon does not decrease the credibility of his medical opinion, as the district court suggested, Gannon, slip op. at 18. On the contrary, we have treated a nonexamining physician's review of a claimant's file as reliable medical evidence on several occasions. See, e.g., Matias-Correa, 345 F.3d at 9-10, 12; Lopes v. Metro. Life Ins. Co., 332 F.3d 1, 3 (1st Cir. 2003); Leahy, 315 F.3d at 19. Moreover, the fact that Dr. Greenhood's opinion was based in part on the FCE does not, as the district court found, Gannon, slip op. at 18, detract from its reliability. See Matias-Correa, 345 F.3d at 10. Indeed, it is not for a court to determine how much weight Dr. Greenhood should have accorded the FCE relative to Dr. Davidson's and Dr. Sweet's opinions, given MetLife's right to use

-7-

its discretion, nor is it for a court to determine precisely how much weight MetLife should have accorded Dr. Greenhood's opinion in its overall decision. See id. at 12. We simply conclude that MetLife reasonably relied on Dr. Greenhood's opinion as one piece of evidence in support of its decision to terminate Gannon's benefits.

Third, MetLife points to the TSA, which was prepared by a vocational consultant in September 2000. The purpose of the TSA was to evaluate whether there were jobs that Gannon could perform given her education, her work experience and training, her past earnings, and her residual physical capacities. Considering those factors, the TSA identified three sedentary occupations -- i.e., personnel scheduler, repair order clerk, and assignment clerk -- that Gannon should have been capable of performing. The district court faulted the TSA for its reliance on the "suspect conclusions of Dr. Greenhood and the FCE" and for its selective consideration of the FCE's findings. Gannon, slip op. at 26. However, as discussed above, Dr. Greenhood's opinion and the FCE provided objective evidence relating to Gannon's capacity for work. The TSA then identified particular occupations that would comport with that capacity for work as well as Gannon's experience and qualifications. MetLife was therefore entitled to consider the TSA in determining whether Gannon was unable to perform any job for which she was qualified. See, e.g., Lopes, 332 F.3d at 3 & n.3

(upholding a plan administrator's decision that relied in part on the results of a TSA); <u>Brigham</u> v. <u>Sun Life of Can.</u>, 317 F.3d 72, 83 & n.13 (1st Cir. 2003) (same).

Fourth, MetLife relies on a surveillance report. On February 2, 2000, an independent investigator observed Gannon leaving her home on four occasions to retrieve her mail, drive for ten minutes, drive to and enter a department store, and drive to the post office and a car dealership. Although the district court correctly pointed out that the surveillance report alone does not provide substantial evidence that Gannon was able to work, <u>Gannon</u>, slip op. at 22, it does somewhat undermine Dr. Davidson's assessments that she could, for example, sit and walk only intermittently and work zero hours per day. <u>See</u> <u>Vlass</u>, 244 F.3d at 31-32 (crediting a surveillance report that directly conflicted with a treating physician's opinion that the claimant had virtually no ability to perform physical tasks). It was therefore reasonable for MetLife to consider the surveillance report as one more piece of evidence in support of its decision to terminate Gannon's disability benefits.

Finally, MetLife points to the SSA's denial of Gannon's claim for social security disability benefits in August 1999. In its letter denying her request for reconsideration, the SSA stated that Gannon's medical and other information indicated that Gannon was able to move about in a satisfactory manner, sit most of the

day, and lift up to ten pounds. While recognizing that her condition prevented her from performing her past job, the SSA concluded that Gannon's condition "d[id] not prevent [her] from doing other work." Although the SSA's determination of a claimant's entitlement to social security disability benefits is not binding on disability insurers, it can be relevant to an insurer's determination whether that claimant is eligible for disability benefits. Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000); Leahy, 315 F.3d at 19-20. In this case, the SSA made specific findings that were highly relevant to MetLife's determination of Gannon's eligibility for disability benefits. Most significantly, the SSA found that Gannon's condition was "not severe enough to keep [her] from working," thereby providing some independent evidence that Gannon no longer met the Plan's definition of "disabled." MetLife was therefore entitled to rely on the SSA's denial of Gannon's claim for social security disability benefits in its consideration of Gannon's claim for disability benefits under the Plan.

Viewed in the aggregate, MetLife's evidence is both substantial and reasonably supportive of its decision to terminate Gannon's disability benefits. Gannon argues nonetheless that the evidence relied on by MetLife is inadequate to support MetLife's decision because it is contradictory to and outweighed by the opinions of the two physicians who examined her. We disagree. To

be sure, both Dr. Davidson and Dr. Sweet consistently opined that Gannon was unable to work.[2]  Dr. Davidson also submitted to MetLife several attending physician statements in which he indicated that Gannon could only sit, stand, and walk intermittently and lift little or no weight.  However, that evidence, while supportive of Gannon's position, is by no means unassailable.  For one thing, ERISA does not require plan administrators or reviewing courts to accord special deference to the opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. __, 123 S. Ct. 1965, 1972 (May 27, 2003).  Moreover, MetLife relied on other credible evidence -- in particular, the FCE, Dr. Greenhood's opinion, and the SSA's denial of disability benefits -- which sufficiently contradicted Dr. Davidson's and Dr. Sweet's opinions that Gannon was completely disabled from working.  See id. (holding that courts may not impose on plan administrators a "discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"); Leahy, 315 F.3d at 21 (stating that a treating physician's opinion that a claimant is totally disabled may be rebutted by other evidence).  Under the terms of the Plan, it was within MetLife's discretion to weigh that

---

[2] For example, Dr. Sweet concluded in May 1998 that Gannon was "completely disabled from any productive work . . . for the foreseeable future."  Dr. Davidson similarly stated in a letter dated June 22, 1999 that he considered Gannon to be "disabled from her usual mode of employment because of [her] inability to bend, flex, sit or stand or twist."

-11-

competing evidence to determine whether Gannon was "disabled" and hence whether she was entitled to continuing benefits.  And in the presence of conflicting evidence, it is entirely appropriate for a reviewing court to uphold the decision of the entity entitled to exercise its discretion.

Furthermore, our case law does not, as Gannon suggests on appeal, require that the evidence relied on by a plan administrator include the opinion of an examining physician.  In fact, in Matias-Correa v. Pfizer, Inc., 345 F.3d 7 (1st Cir. 2003), we recently upheld an insurer's termination of disability benefits in which the supporting medical evidence consisted solely of an independent medical consultant's review of the claimant's file, which included records from the claimant's physicians as well as an FCE.  See id. at 9-10, 12.  In this case, MetLife relied on similar medical evidence -- namely, Dr. Greenhood's independent review of Gannon's file, which included the opinions of Gannon's physicians as well as an FCE.  As we observed in Matias-Correa, it is not our role to evaluate how much weight an insurer should have accorded the opinion of an independent medical consultant relative to the opinions of a claimant's own physicians.  See id. at 12.  Instead, we must determine "'not which side we believe is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor.'"  Id. (quoting Brigham, 317 F.3d at 85).  Despite contradictory medical opinions, MetLife's determination

that Gannon was capable of performing sedentary work was rationally supported by medical evidence, clinical evaluations, and a relevant administrative decision. In light of the record evidence as a whole, we therefore cannot say that MetLife's decision to terminate Gannon's disability benefits was arbitrary or capricious. Accordingly, we <u>reverse</u> the decision of the district court.