Griselle **MIRANDA VEGA,** Plaintiff,

v.

**CINGULAR WIRELESS,** et al., Defendants.

Civil No. 06–1732 (RLA).

United States District Court, D. Puerto Rico.

July 31, 2008.

ing suit must have terminated in favor of the person against whom it was brought. *Id.*

Luis Vivaldi–Oliver, Esq., Mayaguez, PR, for Plaintiff/Petitioner.

Enrique J. Mendoza–Mendez, Esq., San Juan, PR, for Defendant/Respondent.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RAYMOND L. ACOSTA, District Judge.

This action was instituted by Griselle Miranda Vega alleging violations to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 as well as to Puerto Rico's Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a–185m (2002) ("Law 80") and the Puerto Rico Disabilities Act, Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1 §§ 501–511 (1999) ("Law 44").

Named defendants are C.C.P.R. Services, Inc. d/b/a Cingular Wireless ("Cingular"), Cingular Wireless Disability Plan for Non–Bargained Employees (the "Plan") and Broadspire Services, Inc. ("Broadspire").

Specifically, plaintiff challenges the denial of disability benefits under the Plan. Ms. Miranda also alleges that she was wrongfully terminated from her employment in retaliation for having requested information regarding the Plan. Further, plaintiff claims that she was terminated without just cause in violation of Law 80 and also in contravention to Law 44.

Defendants have filed two motions for summary judgment one addressing the adequacy of the denial of benefits based on the record before the Claims Administrator and the other disposing of the remaining claims challenging her termination which will be addressed seriatim.

### THE FACTS

The court finds the following material facts undisputed based on the evidence on record.

C.C.P.R. Services, Inc. d/b/a Cingular Wireless is a company dedicated to providing wireless communication services to individuals and businesses.

The Cingular Wireless Disability Plan for Non–Bargained Employees is an ERISA plan that provides short and long-term disability benefits to Cingular's non-bargained employees.

Plaintiff commenced working as a sales representative for Cingular on February 16, 1995.

As a Cingular employee, plaintiff was eligible to participate in the Plan.

On June 11, 2001, plaintiff was involved in an automobile accident which caused her to miss almost a year of work due to the injuries sustained as a result thereof.

On June 1, 2002, plaintiff returned to work after having requested and being granted short and long-term benefits under the Plan.

On November 29, 2004, plaintiff left Cingular due to her deteriorating health allegedly caused by her June 11, 2001, accident.

On February 4, 2005, plaintiff requested short-term disability benefits retroactive to November 29, 2004.

Short-term disability benefits under the Plan are available only when a claimant establishes that he or she has a total disability. "Total disability" as defined in the Plan means that due to an illness or injury the claimant is unable to perform his or her customary job or other available job assigned by the company with the same full-or part-time classification for which the claimant reasonably qualified. Further, the Plan requires a claimant to establish his/her disability based on "credible objective medical evidence."

Broadspire was Cingular's third-party administrator for Short Term Disability ("STD") claims from January 1, 2005 to December 15, 2005. As Cingular's STD third-party administrator, ("TPA") Broadspire had full discretion and authority to make all STD claims determinations and appeals determinations under the Plan.

While there was no signed contract between Broadspire and Cingular, the parties abided by the following fee arrangement:

a. Broadspire was paid an initial implementation fee after the completion of key implementation tasks;

b. With regard to Cingular's STD program, Cingular paid Broadspire a monthly Administrative Services Only, ("ASO"), fee. This fee was paid to Broadspire for TPA services that Broadspire provided to Cingular. The ASO fee was based on Cingular's covered employee headcount. Specifically, Broadspire was paid on a monthly basis a flat rate ASO fee multiplied by the number of employees eligible for participation in the applicable disability benefits plan.

c. Cingular also paid Broadspire flat rate fees for certain additional services provided by Broadspire, such as peer reviews or an appeal brief which included a peer review.

Broadspire's approval or denial of an STD claim had no economic impact on Broadspire. Specifically, Broadspire was not paid any additional fee, payment or bonus for approval or denial of an STD claim.

The Cingular Wireless Summary Plan Description ("SPD") dated January 2005 specifically delegated full responsibility for disability claims determinations and appeals to Broadspire. Additionally, Broadspire represented itself as the claims administrator in its correspondence with plaintiff.

On February 24, 2005, plaintiff was informed that her claim was being denied by Broadspire for failure to submit proof of disability.

In a letter dated March 1, 2005, plaintiff acknowledged having been notified of the denial of benefits as well as the fact that the pertinent medical certificate had not

been provided. Specifically, plaintiff's correspondence reads as follows:

On February 24, 2005, I was notified that the claim had been denied due to lack of documentation.

I would like to request a reconsideration of my case as the required documentation had not been provided by my doctor because he was out of the office on vacation.

I enclose the completed document accompanied by a copy of the last medical certificate provided by my doctor for your review and consideration.

The SPD establishes a process to file a claim and an appeal of a denied claim of disability benefits.

On April 14, 2005, Broadspire confirmed to plaintiff that it had received her request for appeal of the denial of disability benefits.

On May 26, 2005, plaintiff's claim file, along with the medical records submitted, were referred back to the claims unit for further processing.

Plaintiff's medical records submitted in Spanish were translated into English.

Plaintiff's claim was presented to Lawrence Blumberg, M.D. (Orthopedic Surgeon) for a Peer Review. Dr. Blumberg concluded that the evidence available did not support a disability determination. In his recommendation, Dr. Blumberg specifically indicated:

A1: Based on the documentation and job description, the information does not support a functional impairment that precludes work from 11/29/04 through present. The claimant is a 52–year old Sales Representative for Cingular which is a sedentary position. The claimant sustained a left hip acetabular fracture on 6/11/2001 which was treated with a closed reduction and physical therapy. She suffered continuing left hip pain which is exacerbated by prolonged sit-ting, standing or walking. Her hip x-rays showed early osteoarthritis. Her examination on 3/23/05 demonstrated some loss of motion with hip rotation. However, there is no evidence the claimant cannot sit. There is no evidence that the claimant cannot perform activities using her upper extremities. Therefore, there is no evidence that claimant cannot perform sedentary work activity as a Sales Representative from 11/29/04 through present.

A2: Additional clinical documentation which will be helpful for the evaluation of this claim would be a current complete physical examination of the claimant, specifically, regarding range of motion testing, motor strength testing, and neurologic abnormalities. Additionally, the results of any objective testing would be appropriate.

On June 9, 2005, plaintiff's claim was denied by Broadspire based on Dr. Blumberg's Peer Physician Review. The denial letter reads:

Broadspire Services, Inc. ("Broadspire") is the third party disability claims administrator for Cingular Wireless Short–Term Disability (STD) benefits. We have completed our review of your claim for STD benefits and have determined that your claim beginning 11/29/04 is denied.

The CINGULAR WIRELESS plan defines "Total Disability" as "due to an illness or injury you are unable to perform your customary occupation or another available job assigned by your company with the same full-time or part-time classification for which you are reasonably qualified."

Pursuant to the Cingular Wireless short-term disability plan medical information is required to support the inability of you to perform your job as a Business Account Executive.

On February 4, 2005, you reported a short-term disability claim with the first day of absence as November 29, 2004. You indicated you were unable to work due to a hip acetabular fracture. You identified your treating physician as Dr. William F. Micheo, M.D.

You submitted a medical certificate from Dr. Micheo dated March 23, 2005. It is documented that you had a left hip acetabular fracture, left hip trochanteric bursitis, early hip osteoarthritis and cervical myofascial pain. The treatment is documented as physical therapy, celebrex and zanaflez. It is also documented that you suffered an accident on June 11, 2004 with resultant left hip acetabular fracture. You were treated with closed reduction, physical therapy and rehabilitation. It is documented that you had persistence (sic) left hip pain which is exacerbated by prolonged standing, sitting and walking. A hip x-ray reveals early osteoarthritis and our examination shows pain as well as some loss of motion with hip rotation.

The medical information you submitted was presented to a peer physician for review the following was the result of the review: you had sustained a left hip acetabular fracture on June 11, 2001 which was treated with a closed reduction and physical therapy. You suffered continued left hip pain which is exacerbated by prolonged sitting, standing or walking. You (sic) hip x-rays showed early osteoarthritis, your examination on March 23, 2005 demonstrated some loss of motion with hip rotation. However, there is no evidence that you were unable to sit.

Therefore, your short term disability benefits are denied effective December 6, 2004.

Information that you may submit on appeal in order to perfect your claim may include and is not limited to the following: current complete physical examination, range of motion in numerical degrees of your hip, motor strength testing, neurological abnormalities, results of diagnostic testing, office notes and a treatment plan that substantiates the inability of you to perform the core elements of your job.

If you disagree with the above determination, in whole or in part, you may appeal this decision in writing within 180 days of receipt of this denial letter. The appeal review will consist of a fresh review of your claim based on information already existing in your file, along with any additional information, records, documents, comments, or other relevant material you may submit in support of your appeal. To perfect your claim, please submit medical documentation that clearly substantiates a functional impairment that prevents you from performing your customary occupation. Significant findings are defined as "signs, which are noted on a test or medical exam and are considered significant anatomical, physiological, or psychological abnormalities that can be observed by a practitioner apart from your description of your symptoms". Examples of data that may assist us in our determination include but are not limited to the following:

- Physician exam reports, office notes, progress notes
- Other Healthcare provider reports
- Diagnostic test results, i.e. lab tests, radiographic tests

Upon written request Broadspire will provide you or your duly authorized representative with a copy of documents, records, or other information that we have that is relevant to your claim, at no cost to you.

Broadspire will evaluate all the information and advise you of our determination of your appeal within 45 days after we

receive your completed appeal. If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing. In the event your appeal is denied in whole or in part, you will have the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA).

Plaintiff did not appeal this decision as required by the Plan procedures.

Plaintiff never responded to the June 9, 2005 denial of benefits letter nor did she provide the documentation itemized therein to obtain a review.

Rather, on July 13, 2005, plaintiff's counsel sent a letter to Broadspire demanding payment of disability benefits.

In February 2005, upon plaintiff having requested short-term disability benefits, plaintiff was advised that she would be "subject to termination for job abandonment if you fail to return to work within three (3) business days following: ... (b) the date of [receipt of] the letter from Broadspire notifying you of the denial of your claim or request for extension for Short–Term Disability/FMLA Leave of Absence."

Via a July 7, 2005 letter, Sonia Rodriguez, Cingular's Human Resources Consultant, alerted plaintiff to the fact that she had failed to report to work within the required three-day period after her disability claim had been denied. Ms. Rodriguez admonished plaintiff that failure to return to work by July 18, 2005, would constitute job abandonment.

On July 28, 2005 plaintiff's employment with Cingular was terminated.

## I. DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Defendants have requested the dismissal of plaintiff's ERISA claim for denial of disability benefits under the Plan due to her failure to exhaust the Plan's administrative remedies in that she did not seek review from the June 9, 2005 determination. Additionally, defendants argue that the decision must stand in that it was neither arbitrary nor capricious.

### ERISA—SUMMARY JUDGMENT STANDARD

In cases of judicial review of a plan administrator's disability determination based on the facts as developed in the administrative record, "summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not entitled to the usual inferences in its favor" regardless of which standard of review applies. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir.2005) (citations omitted) (cited with approval in *Buffonge v. The Prudential Ins. Co. of America*, 426 F.3d 20, 28 n. 10 (1st Cir. 2005)).

### EXHAUSTION OF REMEDIES

■ Claimants dissatisfied with the denial of their benefit claims must exhaust the administrative remedies available for review prior to seeking judicial relief. *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61 (1st Cir.2005). "It is well-settled that there is a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Morais v. Cent. Beverage Corp. Union Employees' Supplemental Ret. Plan*, 167 F.3d 709, 712 n. 4 (1st Cir.1999) (citation and internal quotation marks omitted).

■ It is undisputed that plaintiff did not avail herself of the Plan's review pro-

cess even though she was alerted to the procedure. In its June 9, 2005 denial of benefits letter, Broadspire specifically informed plaintiff of her right to appeal its determination. In pertinent part, the document reads:

> If you disagree with the above determination, in whole or in part, you may appeal this decision in writing within 180 days of receipt of this denial letter ...
> In the event your appeal is denied in whole or in part, you will have the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA).

In the July 13, 2005 letter forwarded by plaintiff's attorney, no mention of its intention to challenge the determination nor additional time was requested to perfect the appeal. In other words, the letter did not in any way contest the denial but rather demanded payment of benefits without enclosing evidence to refute the findings.

Based on the foregoing, we find that plaintiff failed to exhaust the administrative remedies available to seek review from the denial of her disability claim.

## DENIAL OF DISABILITY BENEFITS—ERISA STANDARD OF REVIEW

Even assuming arguendo that plaintiff exhausted the pertinent administrative review process, her claim for disability benefits would still fail.

ERISA does not specify the standard to be used by the courts in reviewing denial of benefits. However, the United States Supreme Court in addressing this matter has ruled that "a denial of benefits challenged under Section 502(a)(1)(B) of ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator, or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 950, 103 L.Ed.2d 80, 95 (1989); *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 2170, 153 L.Ed.2d 375 (2002); *Orndorf v. Paul Revere Life Ins. Co.,* 404 F.3d 510, 517 (1st Cir.2005).

The First Circuit Court of Appeals has consistently followed *Firestone* directing *de novo* review of benefit determinations unless the benefit plan grants discretionary authority to the administrator or fiduciary. *See Madera,* 426 F.3d at 63; *Campbell v. BankBoston, N.A.,* 327 F.3d 1, 6–7 (1st Cir.2003); *Cook v. Liberty Life Assurance Co. of Boston,* 320 F.3d 11, 18 (1st Cir.2003); *Brigham v. Sun Life of Canada,* 317 F.3d 72, 80 (1st Cir.2003); *Terry v. Bayer Corp.,* 145 F.3d 28, 37 (1st Cir.1998).

Thus, *de novo* review is the default standard unless the plan specifically allows for discretionary authority. *Rush Prudential,* 536 U.S. at 386, 122 S.Ct. at 2170, 153 L.Ed.2d at 402; *Brigham,* 317 F.3d at 80; *Terry,* 145 F.3d at 37; *McLaughlin v. The Prudential Life Ins. Co. of America,* 319 F.Supp.2d 115, 124 (D.Mass.2004).

If the administrator or fiduciary is given discretion to determine eligibility of benefits or to construe the terms of the plan the "arbitrary and capricious" standard will be applied in which case coverage decisions will be reviewed with a degree of deference to the administrator. *Kolling v. Am. Power Conversion Corp.,* 347 F.3d 11, 13 (1st Cir.2003); *Lopes v. Metro. Life Ins. Co.,* 332 F.3d 1, 4 (1st Cir.2003); *Brigham,* 317 F.3d at 81. *See also, Buffonge,* 426 F.3d at 28 (internal quotation marks and citation omitted) (Court "must defer to the claims administrator's benefits decision, disturbing it only if it was arbitrary, capricious, or an abuse of discretion.")

Where the discretionary grant is found, "*Firestone* and its progeny mandate a def-

erential arbitrary and capricious standard of judicial review." *Recupero v. New England Tel. and Tel. Co.*, 118 F.3d 820, 827 (1st Cir.1997) (internal quotations omitted); *Madera*, 426 F.3d at 64; *Pari–Fasano v. ITT Hartford Life and Accident Ins. Co.*, 230 F.3d 415, 418 (1st Cir.2000); *Terry*, 145 F.3d at 37. "[F]actual determinations under ERISA plans are examined using the abuse of discretion standard of review; federal courts owe due deference to the administrator's factual conclusions that reflect a reasonable and impartial judgment." *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 231 (1st Cir. 2004) (citation and quotation marks omitted).

In this case, the Plan delegates discretionary authority to Broadspire, an independent third party. Accordingly, our review of the third party claims administrator's decision will be guided by the arbitrary and capricious standard. "The operative inquiry under arbitrary, capricious or abuse of discretion review is whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Wright v. R.R. Donnelley & Sons Co.*, 402 F.3d 67, 74 (1st Cir.2005) (citation and internal quotation marks omitted). "A plan administrator's decision must be upheld if there is any reasonable basis for it." *Madera*, 426 F.3d at 64. On arbitrary and capricious review, "[the administrator's] decision will be upheld if the denial is reasonable and supported by substantial evidence." *Glista v. Unum Life Ins. Co. of America*, 378 F.3d 113, 126 (1st Cir.2004). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir.2004).

"[T]he proper standard for reviewing the decision of an insurer that has such discretionary authority is the arbitrary and capricious standard, but ... 'the reasonableness of the insurer's decision determines whether or not it constituted an abuse of the discretion vested in the insurer by the plan'". *Dandurand v. Unum Life Ins. Co. of America*, 284 F.3d 331, 335–6 (1st Cir.2002) (citing *Pari–Fasano*, 230 F.3d at 418). *See also, Lopes*, 332 F.3d at 6; *Cook*, 320 F.3d at 19.

■ Our role under ERISA is "not which side we believe is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor." *Gannon*, 360 F.3d at 216 (citation omitted). Further, the discretion to decide how much weight is to be afforded to any particular medical opinion or piece of evidence in the overall calculus lies with the claims administrator and not with the court. *Id.* at 214.

Applying this limited standard of review, upon examination of the evidence considered by Broadspire in its determination process we find that there is adequate support for its decision.

■ As clearly stated in the June 9, 2005 denial letter, the claim determination was based on the opinion of Dr. Blumberg, an Orthopedic Surgeon, who indicated that based on the evidence available on record plaintiff did not have a functional impairment that precluded her from working. Specifically, Dr. Blumberg found that "there is no evidence the claimant cannot sit. There is no evidence that the claimant cannot perform activities using her upper extremities. Therefore, there is no evidence that claimant cannot perform sedentary work activity as a Sales Representative from 11/29/04 through present."

Dr. Blumberg discussed the certificate prepared by plaintiff's treating physician but found it wanting. It must be noted that "ERISA does not require plan administrators or reviewing courts to accord special deference to the opinions of treating physicians." *Gannon*, 360 F.3d at 215. *See also, McLaughlin*, 319 F.Supp.2d at 126 (no requirement that plan administrator defer to claimant's treating physician); *Giannone v. Metro. Life Ins. Co.*, 311 F.Supp.2d 168, 177 (D.Mass.2004) (no requirement that decision be based on opinions of claimant's physicians).

Plaintiff argues that she was not provided with plan documents, the applicable summary plan description or other information essential for her to seek review of the denial of her claim. However, as can be easily gleaned from Broadspire's denial letter, not only was the definition of "Total Disability" spelled out therein for plaintiff's benefit [1] but the type of information plaintiff was required to submit in order for Broadspire to reconsider her claim was described in great detail. In this regard, the letter reads:

> Additional clinical documentation which will be helpful for the evaluation of this claim would be a current complete physical examination of the claimant, specifically, regarding rage of motion testing, motor strength testing, and neurologic abnormalities. Additionally, the results of any objective testing would be appropriate.

. . . .

> To perfect your claim [on appeal], please submit medical documentation that clearly substantiates a functional impairment that prevents you from performing your customary occupation. Significant findings are defined as "signs, which are noted on a test or medical exam and are considered significant anatomical, physiological, or psychological abnormalities that can be observed by a practitioner apart from your description of your symptoms". Examples of data that may assist us in our determination include but are not limited to the following:
> - Physician exam reports, office notes, progress notes
> - Other Healthcare provider reports
> - Diagnostic test results, i.e. lab tests, radiographic tests

Lastly, plaintiff incorrectly assumes that it was Cingular or Broadspire's duty to have her undergo an additional independent physical medical examination when in fact, the burden of establishing her claim rested solely with her.

Based on the record before us, we conclude that Broadspire's decision to deny plaintiff's disability claim was neither arbitrary, capricious nor an abuse of discretion.[2]

## II. *MOTION FOR SUMMARY JUDGMENT*

Plaintiff further alleges that she was wrongfully terminated from her employment with Cingular in contravention to

---

1. "Total Disability" was defined in the letter as: "due to an illness or injury you are unable to perform your customary occupation or another available job assigned by your company with the same full-time or part-time classification for which you are reasonably qualified".

2. Plaintiff complains that she was never advised that Broadspire was Cingular's third-party claims administrator at the time. Apart from having failed to raise any particular harm flowing from this argument, at least by early 2005 Ms. Miranda was aware of Broadspire's role in the disability claims process and even addressed correspondence directly to this entity. See March 1, 2005 request for reconsideration.

ERISA in retaliation for having requested information from Broadspire regarding her disability benefits under the Plan. Additionally, she claims wrongful termination under Law No. 80 and disability discrimination pursuant to Law No. 44.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Poulis–Minott v. Smith*, 388 F.3d 354, 361 (1st Cir.2004) (*citing Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility de-terminations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also, Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000) ("court should not engage in credibility assessments."); *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir.1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); *Perez–Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 54 (1st Cir.1998) (credibility issues not proper on summary judgment); *Molina Quintero v. Caribe G.E. Power Breakers, Inc.*, 234 F.Supp.2d 108, 113 (D.P.R.2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". *Cruz–Baez v. Negron–Irizarry*, 360 F.Supp.2d 326, 332 (D.P.R.2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Navarro v. Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir.2001); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.*, 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation".

*Lopez–Carrasquillo v. Rubianes,* 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

"Even in an ERISA case where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Thus, Fed.R.Civ.P. 56(c) mandates the entry of summary judgment ... upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 37 (1st Cir.1995) (citations and internal quotation marks omitted).

## ERISA RETALIATION

Plaintiff claims that she was terminated in retaliation for requesting documents and information related to her disability benefit claim. In support thereof, plaintiff cites her attorney's July 13, 2005 letter addressed to Broadspire demanding payment of disability benefits purportedly due. In the event of non-payment, counsel requested copy of the Plan documents and rules in order to compute the amount of benefits outstanding. This letter was allegedly received by Broadspire on July 19, 2005.

Pursuant to ERISA § 510, it is "unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan". 29 U.S.C. § 1140. This type of suit whereby a participant suffers an adverse action because of having availed himself of a right protected by ERISA is deemed a retaliation claim.

*Hamilton v. Starcom Mediavest Gp., Inc.,* 522 F.3d 623, 627–28 (6th Cir.2008).

■ Absent direct evidence of a specific intent to violate ERISA, the burden-shifting mechanism used for Title VII retaliation claims is also applied to ERISA retaliation suits. Hence, plaintiff must initially establish a prima facie retaliation case by presenting evidence that "(1) she was engaged in activity that ERISA protects; (2) she suffered an adverse employment action; and (3) a casual link exists between her protected activity and the employer's adverse action." *Id.* at 628; *Simons v. Midwest Tel. Sales and Serv., Inc.,* 462 F.Supp.2d 1004, 1007–08 (D.Minn.2006).

Once plaintiff is able to meet her prima facie burden, "the burden shifts to Defendants to articulate a legitimate reason for her termination; finally, [plaintiff] must show that the articulated reason was a pretext for retaliation." *Hamilton,* 522 F.3d at 628; *Simons,* 462 F.Supp.2d at 1009.

The proximity between the protected conduct and the adverse action may serve as evidence of causation. *Hamilton,* 522 F.3d at 629; *Simons,* 462 F.Supp.2d at 1008.

Plaintiff has met two of the initial requirements under the aforementioned evidentiary scheme. Inquiring or demanding rights covered under an ERISA plan, which her attorney did via his letter, are deemed protected activities under ERISA. Further, plaintiff was terminated from her employment. Thus, the issue remains as to whether or not there was a causal relationship between these two events.

■ It is axiomatic that "an employee's protected activities will be the cause of an employer's retaliatory conduct only where the employer knew of those protected activities." *Hamilton,* 522 F.3d at 629. As previously noted, counsel's July 13, 2005

correspondence was addressed to Broadspire, the Plan Administrator. There is no evidence available to suggest that the pertinent decision-makers at Cingular were even aware of this correspondence.

■ In this vein, it is important to note that Cingular's admonishment to plaintiff that her failure to return to work would result in her termination[3] predates counsel's written inquiry. According to the evidence on record, via a July 7, 2005 letter, Sonia Rodriguez, Cingular's Human Resources Consultant, alerted plaintiff to the fact that she had failed to report to work within the required period following denial of her disability benefits claim. Ms. Rodriguez further advised plaintiff that failure to return to work by July 18, 2005, would constitute job abandonment. This notice, specifically cautioning plaintiff of the adverse effect of not returning to work by this deadline, was issued close to one week prior to the attorney's written request to Broadspire.

Even assuming that plaintiff had established the requisites to meet her prima facie ERISA retaliation case, plaintiff must still present evidence that the reason proffered by her former employer for her termination—failure to return to work after having been directed to—was in fact a pretext and the result of its retaliatory animus for having requested information related to her disability benefits claim. Apart from her conclusory allegation to this effect there is no evidence on record to support plaintiff's argument.

Accordingly, we find that plaintiff has failed to submit sufficient evidence of causation regarding her retaliation claim and has also failed to rebut defendant's legitimate reasons for having terminated her.

**LAW 80**

Additionally, plaintiff seeks relief under Law 80, also known as Puerto Rico Wrongful Discharge Act. This statute seeks to protect individuals in their employment by requiring employers to indemnify them if discharged "without just cause". P.R. Laws Ann. tit. 29, § 185a. Pursuant to Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." § 185b. The employee's improper conduct, poor job performance as well as violation of the employer's policies are deemed "good cause" for dismissal under the statute. § 185b. *See also, Figueroa Garcia v. Lilly del Caribe, Inc.*, 490 F.Supp.2d 193, 213 (D.P.R.2007) ("statute allows termination for a number of reasons related to the employee's job performance including an employees' improper and disorderly conduct, negligent attitudes toward her work, and violations of the employer's policies.")

■ Further, the statute does not seek to limit "just cause" to the particular situations listed in the statute. Rather, these constitute mere examples of behavior found to run contrary to the orderly functioning of a business enterprise which merit dismissal. *Srio. del Trabajo v. G.P. Indus., Inc.*, 153 D.P.R. 223, 244 (2001).

■ "Although Law 80 generally refers to multiple episodes of misconduct as constituting good cause, Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further consequences." *Hoyos v. Telecorp*

---

**3.** This notice was triggered by Broadspire's June 9, 2005 denial of plaintiff's disability claim.

*Commc'n, Inc.,* 488 F.3d 1, 6 (1st Cir.2007) (citation and internal quotation marks omitted). *Srio. del Trabajo,* 153 D.P.R. at 244–45.

The burden falls on the employer to prove that it had just cause for the termination. § 185k. "[O]nce an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause." *Hoyos,* 488 F.3d at 6. *See also, Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.,* 152 F.3d 17, 28 (1st Cir.1998).

We agree with defendant's position that the decision to terminate plaintiff's employment resulted from legitimate business reasons. Plaintiff failed to return to work by the July 18, 2005 deadline despite Cingular's clear admonishment of the consequence of not doing so.

 Based on the foregoing, we find there was just cause for plaintiff's termination.

## LAW 44

In view of the fact that plaintiff failed to address any of Cingular's well-founded arguments discarding disability discrimination, summary judgment dismissing her Law 44 claim is **GRANTED.**[4]

## CONCLUSION

Based on the foregoing, Defendants' Motion for Judgment on the Administrative Record (docket No. 38)[5] is **GRANTED.**

Accordingly, Broadspire's denial of plaintiff's disability claim remains undisturbed.

4. Plaintiff's sole reference to her disability claim under Puerto Rico's Law 44 appears at ¶ 21 of the Amended Complaint (docket No. 25) and simply states that her "termination while she was in (sic) a leave of absent (sic)

It is further ORDERED that Defendants' Motion for Summary Judgment (docket No. 41) is **GRANTED.**[6]

Accordingly, plaintiff's claims challenging her termination under ERISA's retaliation provision, Law 80 and Law 44 are hereby **DISMISSED.**

Judgment shall be entered accordingly. IT IS SO ORDERED.

due to her disability condition was contrary to Law Num 44".

5. See Plaintiff's Opposition (docket No. **65**).

6. See Plaintiff's Opposition (docket No. **67**).