Edward SMITH, Plaintiff,

v.

**BLUE CROSS BLUE SHIELD
OF MASSACHUSETTS,
INC., Defendant.**

Civil Action No. 07–11210–JLT.

United States District Court,
D. Massachusetts.

Feb. 12, 2009.

Joseph D. Halpern, Blue Cross Blue Shield Law Dept., Boston, MA, for Defendant.

Mala M. Rafik, M. Katherine Sullivan, Alyssa A. Yenikomshian, Rosenfeld & Rafik, P.C., Boston, MA, for Plaintiff.

## MEMORANDUM

TAURO, District Judge.

### I. Introduction

Plaintiff Edward Smith brings this ERISA action against Defendant Blue Cross Blue Shield of Massachusetts, Inc. ("Blue Cross"), challenging a denial of health insurance benefits under an employee benefits plan. Plaintiff alleges that Blue Cross improperly denied him reimbursement for inpatient treatment he received at the Lifeskills of Boca Raton program ("Lifeskills") for substance abuse and mental health. Presently at issue are cross-motions for summary judgment. For the following reasons, Defendant's *Motion for Summary Judgment* is ALLOWED, and Plaintiff's *Motion for Summary Judgment* is DENIED.

### II. Background

#### A. Plaintiff's Medical History and Treatment

Plaintiff has suffered a history of substance abuse and mental illness. He began consuming alcohol at age twelve and smoking marijuana at fourteen. In December 2000, Plaintiff was admitted to McLean Hospital for substance abuse and was diagnosed with pervasive developmental disorder, obsessive compulsive disorder, and unspecified personality disorder. Not stable enough to return home upon discharge from McLean, Plaintiff entered Spring Lake Ranch, a therapeutic community residence in Vermont where Plaintiff resided for six months. In September 2003, Plaintiff met with Dr. Donald C. Goff, who diagnosed Plaintiff with schizophrenia. Plaintiff then entered Bournewood Hospital for Dual Diagnosis Acute Rehabilitation Treatment on January 29, 2004. Plaintiff downgraded to a partial hospitalization program at Bournewood on February 2, 2004 and was ultimately discharged for nonattendance on February 20, 2004.

Concerned that Plaintiff needed an inpatient residential program far away from home, Plaintiff's parents admitted Plaintiff at Lifeskills in Boca Raton, Florida on February 19, 2004, whereupon Lifeskills diagnosed Plaintiff with Alcohol Dependence, Cocaine Dependence, and Schizoaffective Disorder. Plaintiff reported to Lifeskills personnel that on a weekly basis he would consume up to forty drinks, as many as eight "joints" of marijuana, and two to four grams of cocaine. Interviews with Plaintiff also revealed various social difficulties, including delusions about the Mafia. With the help of Lifeskills, however, Plaintiff was able to remain sober throughout his two-month stay.

#### B. Plaintiff's Coverage Under the Plan

Plaintiff is a participant in his father's Master Health Plus health insurance plan (the "Plan"), which Blue Cross both funds and administers. The Plan includes a provision for "Mental Health and Substance Abuse Treatment," which covers "biologically-based mental conditions," such as schizophrenia, and "drug addiction and alcoholism."[1] Covered providers include drug and alcohol treatment centers that offer mental health services.[2] The Plan covers services rendered outside Massachusetts as long as the provider participates in a local Blue Cross Plan.

---

1. AR 2 at 32–34.

2. AR 2 at 11, 14.

In all cases, the Plan only covers benefits for "medically necessary treatments."[3] Under the terms of the subscriber contract, "Blue Cross and Blue Shield decides which covered services are medically necessary."[4] To qualify, all services must be (1) "[e]ssential to improve [the participant's] health outcome and as beneficial as any established alternatives covered by this contract"; (2) "[a]s cost effective as any established alternatives"; and (3) "[f]urnished in the least intensive type of medical care setting required."[5]

The Plan grants Blue Cross "full discretionary authority to make decisions regarding eligibility for benefits" and "to conduct medical necessity review."[6] Without identifying precise criteria for medical necessity, the Plan states merely that Blue Cross "employs a set of formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness efficacy, or efficiency of, health care services, procedures or settings."[7] When Blue Cross denies a claim, the Plan provides members with the right to seek external review by the Massachusetts Department of Public Health's Office of Patient Protection ("OPP"). Under the terms of the Subscriber Certificate, external review is completely voluntary but "will be accepted as the final decision" once it is sought.[8]

### C. Review of Plaintiff's Claim

On January 21, 2005, Plaintiff's father ("Mr. Smith") submitted a claim with Blue Cross seeking a $20,240.39 reimbursement for Plaintiff's Lifeskills treatment.[9] Having received no decision on his reimbursement claim, Mr. Smith wrote a letter to Blue Cross's Grievance Program on April 6, 2005.[10] On April 15, 2005, a Case Specialist in the Grievance Program informed Mr. Smith that his claim had not been processed because he had not requested precertification as required by the Plan.[11] The Case Specialist then explained that Lifeskills had not provided any clinical information, but that Blue Cross would conduct a postadmission review if Mr. Smith signed a release granting Blue Cross access to that information. Mr. Smith turned Plaintiff's Lifeskills medical records over to Blue Cross on May 11, 2005.

On May 24, 2005, a Mental Health Case Manager at Blue Cross sent Mr. Smith a letter informing him that the Plan did not cover his son's treatment at Lifeskills. The case manager then forwarded Plaintiff's medical records to Dr. William Falk

---

**3.** AR 2 at 13.

**4.** AR 2 at 13.

**5.** AR 2 at 13–14.

**6.** AR 1 at 2.

**7.** AR 2 at 16.

**8.** AR 2 at 58–59.

**9.** Defendants maintain that they did not receive the claim until after March 8, 2005. Def. Statement of Facts Supp. Mot. Sum. J. ¶ 16.

**10.** Mr. Smith had already contacted an account representative on March 31, 2000. The representative informed Mr. Smith that his reimbursement claim for Plaintiff's treatment at Lifeskills would be denied, but the representative was not a part of Blue Cross's claims adjudication system.

**11.** Plaintiff did not submit a claim with Blue Cross until nine months after he was discharged from Lifeskills even though the Plan requires precertification for nonemergency inpatient treatment. *See* AR 2 at 19–20 ("Before you enter a facility for inpatient nonemergency medical care and non-maternity care, approval must be obtained from Blue Cross and Blue Shield ... in order for the care to be covered under this contract." (emphasis omitted)).

to conduct a standard internal review. On June 2, 2005, Blue Cross wrote Mr. Smith a letter informing him that his claim was denied because Dr. Falk had determined that the treatment was not medically necessary according to standardized guidelines known as the "InterQual clinical criteria." The June 2 letter also notified Mr. Smith of his right to seek a final review from OPP.

On March 28, 2006, Mr. Smith requested external review by OPP, which assigned the appeal to Island Peer Review Organization ("IPRO"), an independent external review agency. After receiving a copy of Mr. Smith's request for review from OPP, Blue Cross faxed portions of Plaintiff's records to OPP. After conducting his own independent review of Plaintiff's claim, IPRO's reviewing physician, Dr. Frank Iaquinta, affirmed Blue Cross's denial of coverage. Dr. Iaquinta concluded that there was no indication that Plaintiff was a threat to himself or others, stating that "[t]he limited medical records provided do not describe any daily medical or nursing needs." [12]

On March 26, 2007, Plaintiff submitted a 93A demand letter charging Blue Cross with failure to consider all the relevant information in denying Plaintiff's claim. Blue Cross responded by having another physician, Dr. Joel Shield, review Plaintiff's medical records and demand letter. Applying the InterQual criteria, Dr. Shield determined that Plaintiff's treatment was not medically necessary and, thus, not covered by the Plan. Dr. Shield was the third physician to reach this conclusion.

Plaintiff filed a complaint in Suffolk County Superior Court on May 23, 2007, and Defendant removed the action to this court on July 2, 2007. Plaintiff asserts that Blue Cross's denial of his claim for residential treatment at Lifeskills violates the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA").

### III. *Discussion*

#### A. *Standard of Review*

In an ERISA action of this nature, summary judgment operates differently than in the typical case. "[W]here review is based only on the administrative record before the plan administrator …, summary judgment is simply a vehicle for deciding the issue," and "the non-moving party is not entitled to the usual inferences in its favor." [13] The district court, thus, "sits more as an appellate tribunal than as a trial court." [14]

 The Supreme Court set out the standards of decision for an ERISA denial of benefits action in *Firestone Tire & Rubber Co. v. Bruch.* [15] The appropriate standard of review depends on whether the Plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." [16] If the administrator lacks discretion under the Plan, a court must review the decision de novo.[17] If the Plan grants the administrator discretion, a court reviews the administrator's decision under the arbitrary and capricious standard.[18]

---

12. AR 323.

13. *Orndorf v. Paul Revere Life Ins. Co.,* 404 F.3d 510, 517 (1st Cir.2005).

14. *Leahy v. Raytheon Co.,* 315 F.3d 11, 18 (1st Cir.2002).

15. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

16. *Id.* at 115, 109 S.Ct. 948.

17. *Id.*

18. *Id.*

But "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." [19]

■ "The threshold question, then, is whether the provisions of the employee benefit plan ... reflect a clear grant of discretionary authority to determine eligibility for benefits." [20] The Plan at issue here explicitly gives Blue Cross "full discretionary authority to make decisions regarding eligibility for benefits" and "to conduct medical necessity review." [21] The Plan further provides that "[a]ll determinations of Blue Cross and Blue Shield with respect to any matter within its assigned responsibility will be conclusive and binding on all persons unless it can be shown that the interpretation or determination was arbitrary or capricious." [22] Mr. Smith's Subscriber Certificate similarly states that "Blue Cross and Blue Shield decides which covered services are medically necessary and appropriate." [23] Blue Cross's discretionary authority under the Plan could not be clearer. Accordingly, the arbitrary and capricious standard of review is appropriate.

■ The arbitrary and capricious standard is not affected here by any conflict of interest. Plaintiff argues that Blue Cross operates under a conflict of interest and deserves less deference because Blue Cross both funds the plan and evaluates benefits claims. The Supreme Court recently clarified in *Metropolitan Life Insurance, Co. v. Glenn* that this "dual role" indeed creates a conflict of interest. [24] In such a case, the conflict of interest is but one factor among many that may "act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." [25] The Court went on to note that the administrator's dual role "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." [26]

Blue Cross concedes that it has a structural conflict of interest, but argues that the conflict is neutralized by OPP's rendering the final decision on Plaintiff's claim. The Plan delegates decision-making authority to the external review agency selected by OPP whenever a participant invokes his right to third-party review, as Plaintiff did here. The Plan also provides that the ensuing adjudication "will be accepted as the final decision." [27] This court "must focus, as in the usual case, on the determinations of the final decision-maker," [28] which was IPRO, the review agency selected by OPP.

Plaintiff chose to exercise his right to external review through OPP, which the Plan plainly identified as binding on the parties. There is no reason to find that

19. *Id.* (internal quotations omitted).

20. *Leahy,* 315 F.3d at 15.

21. AR 1 at 2.

22. *Id.*

23. AR 2 at 13.

24. —— U.S. ——, 128 S.Ct. 2343, 2346, 171 L.Ed.2d 299 (2008).

25. *Id.* at 2351.

26. *Id.*

27. AR 2 at 58–59.

28. *Terry v. Bayer Corp.,* 145 F.3d 28, 35 (1st Cir.1998).

IPRO was affected by Blue Cross's structural conflict of interest. IPRO has no apparent affiliation with Blue Cross and reviewed Plaintiff's claim independently, without any deference to Blue Cross's initial decision. Plaintiff has thus taken advantage of an external review process designed to reduce Blue Cross's potential bias, and Blue Cross's conflict of interest has been diminished "to the vanishing point"[29] as a result. Accordingly, this court reviews Blue Cross's decision under the ordinary arbitrary and capricious parameters.

### B. *Substantial Evidence*

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the [administrator]."[30] Review is deferential, and the administrator's decision must be upheld as long as "it is reasoned and supported by substantial evidence."[31] "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary."[32] The only issue for the court is whether the administrator's denial of benefits is irrational, with

any doubts resolved in favor of the administrator.[33]

■ Blue Cross's decision[34] to deny Plaintiff reimbursement for his residential treatment at Lifeskills is supported by substantial evidence. The Plan clearly covers only treatments that are "medically necessary" and "[f]urnished in the least intensive type of setting required."[35] During the review process, three licensed physicians conducted separate reviews of Plaintiff's case and determined that the treatment was not medically necessary. Blue Cross cannot arbitrarily discredit the contrary opinion of Plaintiff's treating physician, Dr. Goff, but neither must Blue Cross give any special weight to Dr. Goff's opinion or even explain why his opinion was not given as much weight as that of the three reviewing physicians.[36] The existence of three separate medical opinions supporting Blue Cross's decision substantially justifies Blue Cross's denial of benefits, and Dr. Goff's contrary conclusion is not enough to render the decision arbitrary.

The medical opinions of Dr. Falk, Dr. Shield, and Dr. Iaquinta are sufficiently reliable. Both Dr. Falk and Dr. Shield utilized the InterQual criteria to determine whether residential treatment was medi-

---

**29.** *Glenn,* 128 S.Ct. at 2351.

**30.** *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

**31.** *Gannon v. Metro. Life Ins. Co.,* 360 F.3d 211, 213 (1st Cir.2004)

**32.** *Id.*

**33.** *Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 24 (1st Cir.2003).

**34.** Parties strenuously debate whether this court should review the initial decision of Blue Cross or the decision reached by the IPRO reviewer. This court has determined

that the final, binding nature of the OPP review mechanism effectively neutralized Blue Cross's structural conflict of interest by subjecting Blue Cross's decision to independent third-party review. In making a substantial evidence determination, however, this court reviews all three medical decisions as collectively supporting Blue Cross's decision.

**35.** AR 2 at 13–14.

**36.** *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (reasoning that "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled' ").

cally necessary. Those criteria provide that residential treatment is necessary if there is an "immediate safety risk." [37] The criteria go on to define immediate safety risk as: (1) a suicide or homicide attempt; (2) suicidal or homicidal ideation under certain conditions; (3) self mutilation; (4) initial onset of psychiatric symptoms; or (5) psychiatric symptoms and potential harm to self that involves either (a) severe agitation or panic state, or (b) disorientation or confusion.[38] If the patient presents a "potential safety risk," then the appropriate level of care under the criteria depends on the patient's "degree of functioning." [39]

Both Blue Cross doctors independently concluded that Plaintiff did not meet any of the criteria for "immediate safety risk" based on their review of Plaintiff's records. When Plaintiff was discharged from Bournewood immediately prior to his admission at Lifeskills, Bournewood reported that Plaintiff's condition was "stable." [40] Bournewood medical staff repeatedly indicated that Plaintiff was not homicidal, suicidal, or a danger to himself or others.[41] Similarly, at his admission to Lifeskills, the admission record indicates that Plaintiff did not suffer any hallucinations or homicidal or suicidal ideation.[42] Plaintiff himself reported upon admission that he had not recently experienced hallucinations, delusions, suicidal ideation, or destructive behavior.[43] In short, the medical personnel at both Bournewood and Lifeskills and Plaintiff himself specifically ruled out the very symptoms that would have qualified Plaintiff's treatment as "medically necessary" under the InterQual criteria for "immediate safety risk." The only safety risk identified by Plaintiff now is his impulse to consume cocaine and other illicit drugs, but drug abuse itself is not identified as an immediate safety risk under the InterQual criteria.

The "potential safety risk" criteria, on the other hand, do include substance abuse within the last week.[44] Dr. Falk noted that it was "unclear" whether Plaintiff was a potential safety risk because he had "maintained sobriety" at Bournewood.[45] Dr. Shield did find a "potential safety risk" under the criteria, but found that impairment was not severe enough to warrant residential treatment under the criteria.[46] Dr. Shield found that Plaintiff did not meet the criteria for "severe impairment" because he did not have the relationship or role performance difficulties identified in the criteria.[47] Even if Plaintiff did meet requirements for severe impairment, he still did not merit inpatient rehabilitation because the criteria require at least two treatment episodes within the last year,

---

37. AR 177.

38. *Id.*

39. AR 177–78.

40. AR 450.

41. AR 477 ("Not suicidal. Not homicidal. No hallucinations. No delusions. No flight of ideas. Attention fair. Concentration fair."); AR 469–70 ("Not suicidal. Not homicidal. No hallucinations."); AR 445–46 ("Thought process is clear. No looseness of associations. No flight of ideas. Thought content is not delusional. Not paranoid."); AR 445 ("Patient was not suicidal or homicidal. No hallucinations or delusions.").

42. AR 542.

43. AR 533.

44. AR 177.

45. AR 236.

46. AR 330.

47. *Id.*

and Plaintiff had only had one.[48] Both Dr. Falk and Dr. Shield applied the InterQual criteria and determined that residential treatment was not medically necessary.

Dr. Iaquinta, the IPRO reviewer, did not use the InterQual criteria in making his determination, but a combination of other medical guidelines.[49] Still, Dr. Iaquinta came to the same conclusion as the Blue Cross physicians, noting that "[a]t the time of admission to Lifeskills the patient had no acute withdrawal symptoms and was medically stable. He had no suicidal or homicidal symptoms and his behavior was in good control."[50]

The independent reviews by Dr. Falk, Dr. Shield, and Dr. Iaquinta all support Blue Cross's decision to deny Plaintiff's benefits claim. Each doctor applied standardized medical criteria and reached a decision supported by the guidelines. Accordingly, Blue Cross's decision is supported by substantial reliable evidence.

### C. *Procedural Deficiencies*

Plaintiff also argues that Blue Cross's decision is invalid due to several alleged procedural deficiencies in the review process. Plaintiff complains primarily that Blue Cross failed to give proper notice of its decision regarding his benefits and that Blue Cross did not provide the IPRO reviewing physician, Dr. Iaquinta, with the complete record.

#### 1. *Improper Notice of Denial*

Federal regulations require plan administrators to provide notice of any adverse benefit determination "within a reasonable period of time, but not later than 30 days after receipt of the claim."[51] The notice must be "written or electronic" and include "(i) [t]he specific reason or reasons for the adverse determination; (ii) [r]eference to the specific plan provisions on which the determination is based; [and] (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim."[52] Plaintiff asserts that Blue Cross's determination is invalid for noncompliance with these regulations because notice of denial was verbal, unreasonably delayed, and did not offer reasons for denial.

A failure to comply with federal notification requirements is not enough, by itself, to invalidate an administrator's denial of benefits. Plaintiff must instead make a "showing that a precisely correct form of notice would have made a difference."[53] All that is required of the administrator is "substantial compliance."[54] Here, Plaintiff has made no showing that Plaintiff's failure to provide proper notice affected the outcome of the decision. At least nine months passed from the time Plaintiff was discharged from Lifeskills to the time his father filed Plaintiff's claim for benefits, so any prejudice caused by the delay would in large part be attributable to Plaintiff.

Furthermore, it is not clear on the record when Plaintiff first filed the claim for benefits with Blue Cross. Although Plaintiff states that his father first filed the

---

**48.** *Id.*

**49.** Dr. Iaquinta utilized the American Society of Addiction Medicine Patient Placement Criteria, 2d Edition, Revised; the American Psychiatric Association Practice Guidelines for the Treatment of Substance Use Disorders; and The American Psychiatric Association Practice Guidelines for the Treatment of Schizophrenia. *See* AR 323.

**50.** AR 322.

**51.** 29 C.F.R. § 2560.503–1(f)(2)(iii)(B) (2009).

**52.** *Id.* § 2560.503–1(g)(1).

**53.** *Terry*, 145 F.3d at 39.

**54.** *Id.*

claim on January 21, 2005, Blue Cross denies having any record of the claim until some time after March 8, 2005.[55] When Plaintiff's Case Specialist at Blue Cross contacted Plaintiff on April 15, 2005, she informed Plaintiff that his claim had not been processed because he failed to request precertification. The Case Specialist further informed Plaintiff that his claim could not be processed without more information.[56] Plaintiff's father provided the needed medical records on May 11, 2005, and Dr. Falk's conclusion was conveyed to Plaintiff in writing on June 2, 2005. Given the lack of appropriate records and Plaintiff's failure to request precertification, this delay is not unreasonable.

Plaintiff's receipt of various verbal indications that his claim would be denied before receiving written word of Dr. Falk's conclusion did not prejudice Plaintiff. The June 2, 2005 letter stated that Plaintiff's benefits claim was "denied because it did not meet the medical necessity criteria for inpatient stay in a mental health facility." [57] This explanation adequately notified Plaintiff of the reason for the denial as required by the regulations.[58] Blue Cross substantially complied with the notice requirement, and Plaintiff has identified no prejudice resulting from any deficiency.

**55.** AR 217.

**56.** AR 66. Lifeskills reportedly declined to provide Blue Cross with Plaintiff's medical records. *See* AR 200.

**57.** AR 169.

**58.** *See Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund,* 101 Fed.Appx. 840, 840–41 (1st Cir.2004) (per curiam) (finding that the "requirements are satisfied so long as the claimant is 'supplied with a statement of reasons that, under the circumstances of the case, permit a sufficiently clear understanding of the administrator's position to permit effective review'").

### 2. *Incomplete Record*

■ Finally, Plaintiff argues that Blue Cross failed to provide OPP with a complete record, asserting that Blue Cross only faxed OPP with eight pages of the fifty-two page record. Again, Plaintiff fails to demonstrate that any such deficiency would have changed the outcome of the review. Plaintiff's counsel communicated with Dr. Iaquinta and provided him with information.[59] Had any material information been missing from the record before Dr. Iaquinta, Plaintiff's counsel could have provided the information. In any case, Plaintiff has not identified any information missing from the record that may have altered Dr. Iaquinta's conclusion.[60]

## IV. *Conclusion*

For the foregoing reasons, Defendant's *Motion for Summary Judgment* is ALLOWED, and Plaintiff's *Motion for Summary Judgment* is DENIED.

AN ORDER HAS ISSUED.

### *ORDER OF JUDGMENT*

For the reasons set forth in the accompanying memorandum, this court hereby orders the following:

1. Defendant's *Motion for Summary Judgment* [# 37] is ALLOWED.

**59.** *See* AR 319–22.

**60.** Plaintiff points out that Dr. Iaquinta himself remarked that the medical records provided are "limited." AR 323. This comment does not appear to reflect dissatisfaction with any failure by Blue Cross to provide OPP with the complete medical record. Dr. Falk also commented that the medical record was "limited," and he had the entire medical record from Lifeskills. *See* AR 330. The implication is that the records maintained by Lifeskills were somewhat inadequate, not that Blue Cross was withholding information from OPP.

2. Plaintiff's *Motion for Summary Judgment* [# 41] is DENIED.

IT IS SO ORDERED.