**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIGUEL ANGEL SILVA-PIMENTEL, | No.   20-70152 |
| Petitioner, | Agency No. A098-269-182 |
| v. | |
| MERRICK GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 11, 2021
San Francisco, California

Before:  BERZON, CHRISTEN, and BADE, Circuit Judges.
Dissent by Judge BADE

    Petitioner Miguel Angel Silva-Pimentel, a native and citizen of Mexico,

petitions for review of an Immigration Judge's (IJ) order, issued at the reasonable

fear stage, that determined Silva-Pimentel had not demonstrated a reasonable fear

he will be tortured if he is removed to Mexico.  We have jurisdiction pursuant to

_____

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

8 U.S.C. § 1252. We grant the petition and remand to the agency to consider petitioner's application for relief pursuant to the Convention Against Torture (CAT). Because the parties are familiar with the facts, we recite only those necessary to resolve the petition.

We review the IJ's factual findings for substantial evidence, and "must uphold the IJ's conclusion that [Silva-Pimentel] did not establish a reasonable fear of torture unless, based on the evidence, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Andrade-Garcia v. Lynch*, 828 F.3d 829, 833 (9th Cir. 2016) (quoting *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014)). Pursuant to 8 C.F.R. § 1208.31(c), an "alien shall be determined to have a reasonable fear of . . . torture if the alien establishes a reasonable possibility . . . that he or she would be tortured in the country of removal." "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed or is suspected of having committed . . . or for any reason based on discrimination of any kind." 8 C.F.R. § 208.18(a)(1). Under CAT, a person must demonstrate that torture was "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zheng v. Ashcroft*, 332 F.3d

2

1186, 1188 (9th Cir. 2003) (emphasis omitted) (quoting 8 C.F.R. § 208.18(a)(1)).

When assessing a CAT claim, the agency must consider "all evidence relevant to

the possibility of future torture," including:

> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

The IJ determined that Silva-Pimentel did not "demonstrate[] a reasonable

possibility of torture by or with the acquiescence of the government of Mexico."

We conclude the record compels a contrary conclusion. Silva-Pimentel has

approximately 100 tattoos, some suggesting membership in a gang. He credibly

stated in his interview with an asylum officer that he had been harassed or beaten

by police everywhere he went during the five years he lived in Mexico. In Puerto

Vallarta, Silva-Pimentel was attacked by a group of police officers who stomped

on Silva-Pimentel's face and beat him with their rifles. On another occasion in

3

Puerto Vallarta, police officers robbed Silva-Pimentel. After he fled Puerto Vallarta for Puebla, Silva-Pimentel stated, police officers would harass him "all the time" and "pick [him] up and throw [him in] jail for no reason." The police officers "picked [him] up and actually threw [him] in the car like [he] was a pig and they handcuffed [him] and put their feet on [his] back." Silva-Pimentel then fled Puebla for Acapulco, but the abuse continued. After Silva-Pimentel was falsely accused of a crime, police arrested him, beat him, and took him to jail. When the police released Silva-Pimentel, they "told [him] to run" because "this place is not for [him]." Moreover, Silva-Pimentel stated that a man in Puebla pointed a gun at his head and pulled the trigger, but the gun jammed. The man then hit Silva-Pimentel in the head with the gun and, as Silva-Pimentel fled the situation, nearby police officers ignored his attempts to get their help.

Silva-Pimentel does not know whether his tattoos are the reason police mistreated him. The Department of Homeland Security argues that the police beatings in Puerto Vallarta and Acapulco occurred because the police mistook Silva-Pimentel for a person suspected of committing a crime. Mistaking Silva-Pimentel for a criminal suspect explains, at most, why Silva-Pimentel was erroneously arrested. But the definition of torture includes "any act by which severe pain or suffering . . . is intentionally inflicted on a person for such purposes

4

as . . . punishing him or her for an act he or she . . . is suspected of having committed." 8 C.F.R. 208.18(a)(1). Even if the police suspected Silva-Pimentel had committed a crime, their conduct amounted to torture.

The record shows that Silva-Pimentel relocated within Mexico multiple times to avoid police mistreatment, but everywhere he went he was harassed and abused by police officers. Moreover, country-conditions evidence confirms that "[t]he most significant human rights issues [in Mexico] include[] involvement by police, military, and other state officials, sometimes in coordination with criminal organizations, in unlawful killings, disappearances, and torture."

The police have beaten, harassed, and wrongfully jailed Silva-Pimentel in a consistent pattern that has spanned numerous locations and five years, and country-conditions evidence shows that police and military security forces have engaged in unlawful killings, disappearances, and torture. We conclude the record compels the conclusion that Silva-Pimentel established a reasonable fear that he will be tortured by or with the acquiescence of a government official if he is returned to Mexico. Accordingly, we remand for consideration on the merits of Silva-Pimentel's application for relief pursuant to the Convention Against Torture. 8 C.F.R. § 208.31.

**PETITION GRANTED; REMANDED.**

5

*Silva-Pimentel v. Garland*, No. 20-70152

BADE, Circuit Judge, dissenting:

The majority decides that the record compels the conclusion that Miguel Angel Silva-Pimentel (Silva-Pimentel) established a reasonable fear that he will be tortured by or with the acquiescence of a government official if he is returned to Mexico. The majority bases its decision on incidents in which police beat and robbed Silva-Pimentel in Puerto Vallarta, harassed him and ignored his request for help in Puebla, and beat him in Acapulco. But substantial evidence supports the IJ's determination that these incidents were "unfortunate random encounters" with police that are unlikely to be repeated and therefore Silva-Pimentel does not have a reasonable fear of future torture in Mexico. *See* 8 C.F.R. § 208.31(c) ("The alien shall be determined to have a reasonable fear of . . . torture if the alien establishes . . . a reasonable possibility that he or she would be tortured in the country of removal."); *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020) ("To be eligible for relief under CAT, an applicant bears the burden of establishing that []he will more likely than not be tortured with the consent or acquiescence of a public official if removed to [his] native country." (citation omitted)).

According to Silva-Pimentel, police in Puerto Vallarta beat him up and took his money in the process of arresting him after misidentifying him as an individual believed to have robbed a store. On another occasion, police in Acapulco beat

1

Silva-Pimentel in the process of arresting him after he was falsely accused of inappropriately touching his friend's girlfriend. Although the majority states that he was "beaten by police everywhere he went during the five years he lived in Mexico," Silva-Pimentel confirmed that police in Puebla did not beat him. Rather, while he was homeless in Puebla, police repeatedly detained him and threw him in jail for "walking around." Moreover, the incident in Puebla in which police reportedly ignored Silva-Pimentel's attempt to get their attention after he was held at gunpoint and hit over the head by a random man is insufficient to show acquiescence because there is no indication that police were aware of the attack before it occurred and thereafter failed to intervene; rather, police only saw Silva-Pimentel running away after the attack. *See* 8 C.F.R. § 208.18(a)(7) ("Acquiescence of a public official requires that the public official, *prior to the activity constituting torture*, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." (emphasis added)).

These unconnected encounters with police are insufficient to demonstrate a "reasonable possibility" that Silva-Pimentel "would be tortured in the country of removal," as there is no reason to believe that he would continue to be accused of criminal activity or misidentified by police as the perpetrator of a crime. 8 C.F.R. § 208.31(c). Although the majority appears to suggest that police will continue to

2

mistreat Silva-Pimentel because of his numerous tattoos, there is no evidence this is the case; police never said anything to Silva-Pimentel about his tattoos. When asked whether the people who harmed him before would seek to harm him now, seven years later, Silva-Pimentel responded, "To tell you the truth, I don't know." And Silva-Pimentel could not recall whether it was the same police who repeatedly harassed and detained him. Although he suffered harm at the hands of the police, Silva-Pimentel's speculation that he would be tortured by police if returned to Mexico is not enough to establish eligibility for relief under the Convention Against Torture. *See Garcia v. Wilkinson*, No. 19-72803, 2021 WL 628281, at *8 (9th Cir. Feb. 18, 2021) ("[A] speculative fear of torture is insufficient to satisfy the 'more likely than not' standard.").

Because substantial evidence in the record supports the IJ's determination that Silva-Pimentel has no reasonable fear of torture if returned to Mexico, I respectfully dissent. I would deny the petition for review.